Turning to the last case on our argument docket, it's Bradford, who's the appellee v. Calvin is set for 15 minutes per side. For the appellants, I think, we have Ms. Jerry Lynn Cardcastle and for the appellee, Mr. Jeremy Barron. So I apologize if I mispronounced anyone's names, but we appreciate your being here. As you probably heard from earlier comments, we very much appreciate your appearing remotely during a pandemic. And if either of you needs an extra minute or two, you can ask me for it. You shall receive it. Okay, so why don't we proceed with Ms. Cardcastle first. Thank you, Judge Gould. May it please the court, my name is Jerry Lynn Cardcastle. I am a Deputy Attorney General for the state of Nevada, and I represent the respondents in this matter. Your Honors, this case has unique procedural issues, which we may discuss today. However, in the final analysis, respondents request reversal based on the merits of this case. The merits of this case do not entitle Mr. Bradford to a grant of equitable relief. Turning to the merits, first, it is important to recognize that Mr. Bradford's federal petition challenges his conviction in the Zambrano case. However, in ground two of his petition, he alleges deficient performance and prejudice that are solely related to the Limongelo case, which is a case which was not properly before the federal court, and a case which was not charged as it related to Mr. Bradford during the time of plea negotiations. Counsel, I don't think that's an entirely fair characterization of the argument. I think a more accurate characterization of the argument was that in advising his client as to the plea offer, which covered both cases, the performance was deficient, and some aspects of that deficiency had to do with the Limongelo case. But I don't think it's characterizing the argument as only dealing with performance in what was at that time the uncharged Limongelo case. Your Honor, respondents respectfully disagree with that. Mr. Bradford does not allege any deficient performance or insufficient advice as it pertains to the Zambrano case. But didn't the plea offer cover both cases? Yes, it did, Your Honor. But Mr. Bradford does not allege that trial counsel failed to properly advise him regarding the Zambrano case. He only alleges deficient performance related to the Limongelo case. He states that if he had known about the possibility of the death penalty in the Limongelo case, he would have accepted the deal. However, the death penalty in the Limongelo case, the possibility of facing the death penalty, is a collateral consequence of rejecting that plea offer. And under United States v. Frye, attorneys are not obligated to inform their clients of collateral consequences of a plea. Also, the sole prejudice that Mr. Bradford alleged in his petition was being on death row. The Nevada Supreme Court has already remedied that alleged prejudice by reversing his conviction in the Limongelo case. And the state has not yet retried him in the Limongelo case. So he is under judgment of conviction in that case, which also leads to jurisdictional questions. As he's not under a judgment of conviction in that case, the district court did not have subject matter jurisdiction to grant him relief therein. But returning to the merits of the case, the district court also erred in determining that Bradford was entitled to relief in the Limongelo case because it erroneously applied Strickland and it erroneously applied this court's holdings in Turner v. Calderon, which the court recognized in its order. First, the district court erroneously applied Strickland because the court failed to analyze counsel's conduct or performance at the time in those proceedings. The district court unreasonably determined that the trial counsel... Counsel, what is the state's view of the factual and legal relevance, if any, of the fact that the second PCR counsel, I believe, I don't know the gender, Mr. or Ms. Rasmussen, I think it was, didn't raise this claim in the second PCR proceeding? The United States district court did not examine whether the second post-conviction counsel was deficient in failing to raise that. The court did not comment on whether Ms. Rasmussen was ineffective for failing to raise that. Does the state have any position on whether the fact that after talking to the petitioner, she didn't raise that, whether that bears at all on whether the first PCR counsel, by not raising this, wasn't functioning as the counsel guaranteed by the petitioner? I certainly believe that Ms. Rasmussen's failure to include the claim in ground two in the second state post-conviction petition reflects that the claim did not have merit. It was not ripe at the time of the state post-conviction proceeding. If we look to the Mr. Bradford had not been tried in the Limongello case at that time, therefore, there would be no basis to raise the claim in the second petition for rid of habeas corpus in the state. Does that answer your honor's question? Well, I heard that that's the state's answer. Yes, that is the state's position. Your honor, I can elaborate on that further. You can proceed with your argument as you see fit. Okay, thank you, sir. The court also, in looking, analyzing this from counsel's perspective, at the time of the plea negotiations, the state presented this offer to counsel and to Bradford in a week or two prior to the trial in the Zambrano case. But the court failed to analyze whether it was reasonable for trial counsel to essentially put a hold to trial preparation in order to investigate the Limongello case and the filings therein. The court expected trial counsel to essentially stop trial preparation in the week or two prior to trial and investigate the Limongello case. However, it was reasonable trial strategy for counsel to focus on the Zambrano trial, which was imminent. Instead of investigating the which was uncharged and unfactually developed as it related to Mr. Bradford. Additionally, the district court failed to determine whether Bradford had the tools necessary to make an intelligent decision regarding the plea offer. This is required in Turner v. Calderon, which the district court recognized. Respondents assert that Mr. Bradford did have all of the tools he needed to know that he would likely be subject to the death penalty in the Limongello case if he were charged and if he were Mr. Bradford was told at the evidentiary hearing where he was present that the state intended to charge him in the Limongello case and the state intended to seek the death penalty using a conviction in the Zambrano case as an aggravating factor in seeking the death penalty. Additionally, Mr. Bradford knew the state had filed a notice of intent to seek the death penalty in the Zambrano case, but ultimately the state only sought the death penalty against, as Mr. Bradford put it at the evidentiary hearing, against the trigger man. And counsel informed Mr. Bradford that he knew what he had done in the Limongello case. Therefore, he knew what his exposure would be. And since Mr. Bradford knew that Mr. Williams had accepted a plea offer in order to avoid the death penalty in the Zambrano case, he certainly had every basis to know that if he as the trigger man wanted to avoid the death penalty, he should accept the state's plea offer. Just as Turner had all of the tools he needed to know of the possibility of a death penalty, Mr. Bradford also had all of the tools he needed to know that he would face the death offer. Accordingly, the merits of this case favor reversal in favor of respondents. Additionally, the district court erred in granting Mr. Bradford relief to the Limongello case because that case was not properly before the court. It is Mr. Bradford's position that that the Limongello case is simply implicated through his challenge to the Zambrano conviction. However, the record belies those claims. Mr. Bradford's allegations in his petition in ground to relate to the Limongello case. The court's order focuses upon deficient performance and prejudice. On this jurisdictional question, there is no question that the petitioner is in custody pursuant to the judgment of a state court. That's undisputed, right? Yes, your honor, that's undisputed. And the petition purports to challenge that custody, right? Yes, your honor. And then don't we simply need to look at whether there is a nexus between the petitioner's claim and what he is claiming is the unlawful nature of the custody. And regardless of the merits of petitioner's claim, don't we have more than sufficient evidence of we do not believe that there is a sufficient nexus. And I'm noting that my time is running out and I'd like to reserve the remainder of my time for rebuttal unless your honor would prefer that I answer this question nice. Counselor, if I could interject. I know you wanted three minutes for rebuttal. I think if you just proceed with your argument to answer Judge Bennett fully, I'll give you three minutes for rebuttal at the end. Certainly, your honor. The respondents believe that there is an insufficient nexus between these two cases because under Dickinson v. Shin, this court noted that the petition challenged must also give relief in that same case. That is not where the relief lies in ground two. In ground two, Mr. Bradford seeks to be relieved of facing the death penalty in the Limongello case. He does not challenge his argument that he is not in custody under section 2254A as it pertains to the Limongello case. He is solely in custody under 2254A as it relates to the Zambrano case. And because the relief that he requests relates to the Limongello case, which is not the case that he challenges in his petition, there is an insufficient nexus to grant relief. Therefore, respondents request reversal and I'd like to reserve the remainder of my time as Judge Gould said with the patients from this court. Okay, the clerk can set Ms. Hardcastle's rebuttal time at three minutes. Okay, we'll now proceed to hear from the attorney. So, Mr. Barron. Good afternoon, your honors, and may it please the court, Jeremy Barron on behalf of Mr. Bradford. I'll start as the state did with the merits of our claim and I'd like to begin with deficient performance. Our view on deficient performance is pretty simple. When an attorney in a case gets a global plea offer from the state that covers the under the Sixth Amendment to communicate the global offer to the defendant and give reasonably competent advice to the client about the benefits and the drawbacks of accepting that global negotiation. And there's a series of reasons why that's the correct legal view of deficient performance. But counsel, as I understand the record over and over and over again, told petitioner this was a good deal and he ought to take the plea offer and your client, who certainly knew what he had done in the two cases, turned it down. Isn't that relevant? That this is not a case like another case that has been cited by both parties where defense counsel was saying, don't take the deal, go to trial. Here he was saying, take the deal, don't go to trial. This is a really good deal. You can be out while you're still a young man. So I would dispute the characterization of the record slightly. The lawyer did nominally advise the client to take the deal. This is how I'm borrowing from the district court's phrasing from his order. The lawyer did nominally advise Mr. Bradford to take the deal, but emphasize more strongly the possibility that they could win at trial in the Zambrano case. Well, I'm reading the lawyer's testimony. I think at ER 72, tried to sell him on the deal. I would say at least five or six times, look, you're a young man, you're going to be young when you're get out and you're dealing with two cases for the price of one. So I put the strengths and weaknesses and he just wouldn't take the deal. So, I mean, that's what he testified to. Sure. And Mr. Bradford also gave his account of how the negotiations played out. And I'll quote from the district court's order on this precise point. This is at two ER 17. While the lawyer did advise Bradford nominally to accept the prosecution's offer because of the unpredictability of trial, he emphasized to a greater degree with Bradford his confidence that Bradford would prevail at trial in the Zambrano-Lopez case. So I would disagree that it was a full-throated take this deal. It was more of a, hey, 20 years is a fair resolution. You'll get out while you're young, but the Zambrano case is a defensible case. And missing from any of that advice was any mention of the dangers and the downsides of leaving Mr. Bradford exposed in the Lemongello case. But counsel, and here's where I have one of the major problems with your case, your clients saying, I would have taken the deal if only I'd known I was facing the death penalty in the Lemongello case. That's a fair characterization of your client's testimony, right? Yes, the possibility of facing charges over the death penalty in the Lemongello case. And I'm looking at ER 1313, the July 2003 hearing. I think it was a prelim, but I might have the nature of the hearing wrong, where the prosecutor, Mr. Daskus, on several occasions at page 354 and 355 of the transcript, all at ER 1313 in the condensed version, he puts on the record in front of your clients several times that your client is facing the death penalty. So, and to me, that goes to two things. One, the PCR counsel couldn't have been not acting as the counsel provided by the Sixth Amendment for not raising a claim that your client wasn't told about the death penalty when the record here shows that he was. But second, prejudice, your client knew he was facing the death penalty. So, if you could address both of those things based for the moment, just on the prelim transcript, if it was in fact a prelim. Yes, it was a prelim. It was a very lengthy prelim. Those comments that the prosecutor made were at the very end of it. This is at the very beginning of the case. So, there's a set of charging decisions. There's a reservation of the right to seek the death penalty in Zambrano against the three co-defendants. There's that preliminary hearing. And then the state ultimately decides not to seek death against Mr. Bradford in the Zambrano case. And there's a conversation between Mr. Bradford and his attorney where the attorney says, you don't have to worry about death. Death isn't going to be an option in your case. And so that put Mr. Bradford at ease as far as the death penalty is concerned. But the prosecutor's comments at that preliminary hearing are relatively complicated. He's talking about different aggravators and things like that. And I think it's important to keep in mind that at the time, Mr. Bradford is either 18 or 19 years old. He may have been 18 at the time of that preliminary hearing. He's a young guy. He does not have a death penalty. He testified in the habeas case that he knew those people charged with murder, those charged with murder, faced the death penalty. That's what they knew growing up. That's what he knew at the time. I mean, he testified he knew people charged with murder faced the death penalty. That may be true as a general matter. But of course, as we all know, whether the death penalty is even available in the specific case can be a very complicated question of law that an 18 or 19 year old kid like Mr. Bradford wouldn't necessarily know. Those sorts of concepts about death eligibility, aggregated circumstances, and the like are the sorts of things that a young guy like Mr. Bradford would need an attorney to be able to advise him about. And here the attorney wasn't doing that. And specifically with prejudice, I'll note that District Court made an explicit credibility finding, factual finding in our client's favor, explicitly said Mr. Bradford was unaware in March of 2004 that he could face capital charges in the Lemangelo case if he turned him out. So as I read the record, I don't recall the District Court really grappling with what he was advised at the preliminary hearing during which the prosecutor said that both cases were death penalty eligible. Is there anything in the record with your client specifically addressing the preliminary hearing? I agree with you, the terms aggravator and what constitutes an aggravating circumstance, all that can be very technical. And even someone much older than an 18 year old may not understand the implications of that. But the language of the advisement to the court and before the defendant at the preliminary hearing was pretty plain. It did reference aggravator, but the prosecutor emphatically stated, we do intend to charge him within, I think, two weeks time frame at the time with this other murder. And both cases are death penalty eligible. So can you address that portion of the record, which I don't think the District Court grappled with? Sure. So I think the District Court was fully aware of that portion of the preliminary hearing transcript. We mentioned it in our pre-hearing briefs. As I was explaining before, the prosecutor makes that comment and then ultimately declines to seek the death penalty against Mr. Bradford in the Zombrano case. And then there's a conversation between Mr. Bradford and his attorney where the attorney says, you know, the death penalty is an option for you anymore. And so at that point, the prosecutor... Right. In the Zombrano case, based on his role in the offense. So didn't that, I mean, that's a double edged sword, right? Cuts both ways. On the one hand, you know, you're relying on the fact that the prosecutor gave up the death penalty in the Zombrano case based on the role, but they did go forward with the death penalty as the codependent based on, you know, the prosecutor's assessment of greater culpability. So wouldn't that put the defendant on notice that in the if death penalty is on the table and the prosecutor's decision may very well be different depending on what his role in that offense was. It certainly should have put the attorney on notice, which it didn't. And whether it put Mr. Bradford on notice, again, he is a young guy who doesn't have a sophisticated understanding of the law. His attorney is giving him the false impression. He has nothing to worry about in the Lemangelo case. That's another finding that the district court made. So Mr. Bradford is in March of 2004 thinking, I don't have anything to worry about in the Lemangelo case. That's what my lawyer is telling me. Capital, the capital structure is very complicated. His attorney is giving him false assurances to not worry about- Did the attorney give him false assurances in the subsequent case or did the lawyer said, look, you know, you're not charged yet, but you know what you did, so you can assess your risk of exposure there. What does the record reflect? So I'm looking for the exact quote from the district court. I don't have it ahead of me, right in front of me right now. I believe it's something like the attorney gave Mr. Bradford the false impression that he had nothing to worry about in the Lemangelo case. So that that's what Mr. Bradford is thinking in March of 2004 that he doesn't, and that's at 2 ER 18. I apologize for having that ready, that the attorney suggested that Bradford did not have much to worry about with the Lemangelo case. So again, you're Mr. Bradford. You don't know about the capital sentencing structure, the capital charging structure. You are relying on your attorney to give you reasonably competent advice about the advantages and disadvantages of accepting this global negotiation. And the lawyer is giving you the false impression. You don't have anything to worry about in the Lemangelo case. And as a as a 18, 19 year old, you are entitled to rely on your attorney and assume that your attorney is giving you the best possible advice. Right? I see, I see, I see what you're referring to in the district court's order. And that's ER 18 lines eight and nine Sullivan suggested that Bradford did not have much to worry about with the Lemangelo case. But but I'm looking for the actual evidentiary support for that proposition. So I think Mr. Bradford testified that along those lines, and the district court explicitly found Mr. Bradford to be a credible, a credible witness, true credibility findings in his favor, and then ultimately reached the factual findings that it did, including on this precise point, and the district court was there for the evidentiary hearing. It had read all the hearing briefs, familiar with the record, heard all the witnesses testify, it saw the state try and cross examine Mr. Bradford on this precise point, and ultimately drew the credibility findings and reach the factual findings that it did. And those are the sorts of firsthand credibility findings and factual determinations that usually appellate courts are very loath to second guess me the district court has the firsthand view of what's going on and assess the witnesses, demeanor, and all of that. And so for an appellate court to then come in and say, we're not sure about the credibility findings that the district court made would be a pretty rare situation. And here, we're not in that situation. Because, again, Mr. Bradford, he's relying on his lawyer, he's looking up to his lawyer, he's expecting his lawyer to give him reasonably competent advice about the advantages and the disadvantages of accepting this global negotiation. The lawyer is not talking to him at all about the Lemangelo case, both the lawyer and Mr. Bradford were pretty clear on that point, there was no conversations whatsoever about the Lemangelo case. During the March 2004 discussions about the offer, and Mr. Bradford came out with the false impression, you didn't have to worry about the Lemangelo case. And that's part of why he ultimately turned down the deal. So if his lawyer had given given him reasonable advice, which is, look, the state suspects you for murder in this I know their intent on charging you, it's easily foreseeable that if they charge you, this is a capital, it's gonna be a capital prosecution. If the lawyer had given that baseline competent advice to Mr. Bradford in March 2004, then yes, he would have been on notice of that very real danger. And he would have accepted the plea deal as the district court correctly concluded. So ultimately, we were able to show deficient performance, the district court reached the correct findings on that we showed prejudice. And the district court offered extended a proper remedy in this case, ordering the state to reoffer the March 2004 deal. And so under your theory, under your Strickland theory, although it may not be legally relevant to excusing the procedural default, the second PCR council was also also failed Strickland for not raising this as well, correct? Right, so I would agree that it's not legally relevant. But let me give you my impression of what was going on with the second PCR council. But the second, the second PCR council had more information than the first PCR council, the second council talked to Mr. Bradford, Mr. Bradford told the second PCR council some of the the record. And in fact, specifically said that the first PCR council was deficient. And yet the second PCR council did not raise this claim. So if any of what I just said is factually incorrect, and I packed a lot to the question, please tell me. Right? Well, the record isn't developed on this point. And so if there's any genuine disputes of material fact that are relevant to Martinez deficient performance, we would want to remand so that we could develop that record. But with that said, let me give you my impression of what was going on. The second PCR attorney got on the case on the appeal and realized pretty quickly that that the first PCR attorney had done a very substandard job with that petition worked quickly to try and get a remand. So that there could be something of a do over in the state district court. I'm not sure that was meant to be a problem as well. I see that I have gone over my time unless the court has further. As counsel, you are over your time. But we're giving an extra three minutes to Ms. Hardcastle. So I don't want you to rush on your answer to Judge Bennett or Judge Wynn. So if you want another three minutes, we'll add that to your clock. Well, I appreciate the consideration. I'll just try and finish the point if I can. Again, I believe the second PCR counsel is acting quickly to try and get something on record with the Nevada State Supreme Court and the state district court to try and rectify the obvious failings of the first post conviction attorney. Now, if there's any, and ultimately the question under Martinez is whether the first lawyer in PCR was deficient, not the second lawyer, third lawyer or anyone else. And here we've certainly shown by preponderance of the evidence, the deficiency of the first lawyer. If there's any questions about the probative value of what the second lawyer did or did not do, again, perhaps a further hearing on Martinez deficient performance would be useful. We don't think that's necessary. We think we've met our standard under Martinez deficient performance. So we're asking the court to affirm on the lap. Thank you, Mr. Barron. Dulles, Ms. Judge Wind or Judge Bennett, do you have a question for you? We'll proceed to the rebuttal. I do want to just, and I'll ask this to Ms. Hardcastle too. Everybody is in agreement that if we were to reverse, we should remand for the district court to address the unaddressed issues. Am I correct that the district court said we're moot? Am I correct that both council agree with that? I agree. Even if the court affirms, in abundance of caution, we just want to make sure if the deal goes south, we can keep getting those claims. But yes, I would agree with that. Hopefully that won't be necessary. And Your Honor, yes, the respondents do agree that the district court erred in determining those claims are moot. Okay, then we'll thank Mr. Barron for his excellent argument. And Ms. Hardcastle, you have some time for rebuttal. So please proceed. Thank you, Your Honor. I would just like to respond to a few of the things that Mr. Barron raised in his argument. First, at the core of Mr. Barron's argument is that there is a Sixth Amendment duty of an attorney to advise his client of a case wherein the client has not been charged and where the attorney does not represent that client if the case is included in global plea discussions. However, that is an has not been resolved by this court or by the United States Supreme Court. Secondly, where the court where Mr. Bradford emphasized that counsel nominally advised him to accept the offer, but yet emphasized to a greater degree, his prediction at the outcome of the Zambrano trial is unavailing. In Turner v. Calderon, this court determined that an attorney's predictions as to the outcome of trial, even if incorrect, do not constitute deficient performance. There is no evidence in the record and no argument that trial counsel's prediction that they would prevail at trial was unreasonable. As to facing charges in the Zambrano case, Mr. Bradford did testify at the evidentiary hearing that he had the false impression that he did not need to worry about the Limongiello case. However, Mr. Bradford never cites to any his belief, but there is no basis for that in the record. Additionally, Mr. Bradford explains that the comments about the aggravators and the death penalty were at the end of a lengthy preliminary hearing. I would like to point out that that was during a preliminary hearing. I would like to point out that the client would have reason to be aware and paying attention to discussions about bail because those discussions impact whether or not the client will remain incarcerated. Further, at the evidentiary hearing, Mr. Bradford noted that he did understand those issues. Lastly, as far as the Martinez case goes, Mr. Bradford gives his impression of what everyone was thinking, but those impressions are not shown in the record. Accordingly, on the basis of the merits and for reverse the decision. Thank you. Thank you, Ms. Hardcastle. I'm going to reiterate to counsel how important it is to our court to hear good advocacy from the parties and we've certainly heard that today. Both sides of the case have presented their positions well, so we thank you. With that said, I'll say the Bradford case shall now be submitted and the parties will hear from the court in due course and the court reporter could bang the gavel and the court will finally recess for the week. This court for this session stands adjourned.
judges: GOULD, NGUYEN, BENNETT